## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| GLOCK, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:12–CV–0136-MHS |
| v. | ) | |
| | ) | |
| GLOBAL GUNS & HUNTING, INC. | ) | |
| d/b/a OMB GUNS and JOHN RALPH, III, | ) | |
| | ) | |
| Defendants. | ) | |

## GLOCK, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO SET TIME CERTAIN DEADLINE FOR PROVIDING AMENDED RESPONSES AND TO DEFER RULING ON PENDING MOTIONS

Plaintiff, Glock, Inc. ("Glock") by and through its attorneys, Renzulli Law Firm, LLP and Miller & Martin, PLLC, respectfully submits this memorandum of law in opposition to the Motion to Set Time Certain Deadline for Providing Amended Responses and to Defer Ruling on Pending Motions ("Motion to Amend") by defendants Global Guns & Hunting, Inc. d/b/a OMB Guns ("OMB") and John Ralph, III ("Ralph").

## I.   <u>SUMMARY OF THE ARGUMENT</u>

As defendants note, Ralph repeatedly asserted his Fifth Amendment privilege against self-incrimination as a shield to refuse to provide relevant information in response to Glock's written discovery requests, as well as during his deposition. Nevertheless, discovery was completed and Glock's motion for summary judgment has been fully briefed and is ready to be decided.

On January 29, 2015, Ralph pled guilty to having "devised and intending to devise a scheme and artifice to defraud Glock of the intangible right of honest services" from its high-ranking managers, Craig Dutton and Bo Wood, by paying them bribes and kickbacks in the form of "gifts, payments and other things of value totaling approximately $900,000" in exchange for "favorable and preferential action."  Mot. to Amend at 4-5.[1]  Having pled guilty to a felony based on the very conduct at issue in this case, Ralph now seeks to be rewarded by being allowed to withdraw his prior invocation of the Fifth Amendment and use it as a sword to amend his responses to Glock's written discovery requests in an attempt to "explain the circumstances of the plea," by claiming that it is unrelated to the "conversion of guns."   The fulsome and complete record in this case already

---

[1] Defendants' Motion to Stay (Dkt. No. 171) has been effectively mooted by Ralph's entry of a guilty plea and can be denied as moot since defendants now seek to withdraw it.  Mot. to Amend at 9.

contains ample and undisputed evidence of defendants' unauthorized conversion of guns, separate and apart from Ralph's invocation of his Fifth Amendment privilege against self-incrimination. Glock's Statement of Undisputed Material Facts in Support of its Mot. for Summary Judgment (Dkt. No. 153-1) ¶¶ 129-451.

Ralph long-ago made his choice to refuse to provide relevant discovery by exercising his Fifth Amendment privilege against self-incrimination. Glock is entitled to rely on the adverse inference created by his assertion of the privilege, as well as the facts that Ralph admitted in his guilty plea, in support of its motion for summary judgment. There is no legal basis to allow Ralph to amend his discovery responses in an attempt to explain away his criminal conduct to avoid civil liability.

## II.   <u>ARGUMENT</u>

Defendants claim that now that Ralph has entered into a guilty plea, he is "required" to amend his responses to Glock's written discovery requests pursuant to Rule 26(e)(1)(A) of the Federal Rules of Civil Procedure and that Glock "is entitled to have those responses amended." Mot. to Amend at 8. Discovery in this case has been closed for more than a year and motions for summary judgment have already been fully briefed. In addition, Glock has not requested that Ralph amend his discovery responses based on the entry of his guilty plea.

Defendants claim that Ralph has not "disputed that he paid" the Duttons and Woods, but rather that he asserted his Fifth Amendment privilege against self-incrimination "in response to discovery requests which in any way referenced the payments."  Mot. to Amend at 7.  Rule 26(e)(1)(A)[2] simply states that a party that has responded to discovery must "supplement or correct" its responses if it "learns that in some material respect the disclosure or response is <u>incomplete or incorrect,</u> and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." (Emphasis added).

Defendants do not identify any part of Ralph's discovery responses that were incomplete or incorrect, but rather seek to withdraw the refusal to respond and replace it with a substantive response.  Further, on those issues related to the bribes and kickback payments that defendants made to Dutton and Wood, this Court can rely on the written admissions made by Ralph in his plea agreement.  Accordingly, the additional or corrective information has already been made known through the written plea agreement that defendants filed as an exhibit to their Motion to

---

[2] Defendants also cite Rule 26(e) of the Georgia Rules of Civil Procedure, which is not relevant to a case pending in federal court.  O.C.G.A. is based on an earlier version of Rule 26(e) of the Federal Rules of Civil Procedure, which only imposed a duty to amend when the failure to do so constituted a knowing concealment, which does not apply since defendants have filed Ralph's plea agreement with the Court.

Amend, obviating any alleged "requirement" for defendants to further amend their discovery responses.

What defendants actually seek to do, is not to withdraw the assertion of the privilege against self-incrimination to simply admit that the payments were made — which has already been done through the plea agreement — but rather to provide themselves with an opportunity to attempt to explain that the bribes and kickback payments are somehow not relevant to Glock's conversion claims. Defendants do not cite any case law for their argument that Rule 26(e) requires them to amend their discovery responses. This is because the case law holds that they are prohibited from attempting to use Rule 26(e) as a basis for the untimely disclosure of evidence that will allegedly support their claims. *See generally Havenfield v. H&R Block, Inc.*, 509 F.2d 1263, 1271-72 (8th Cir. 1975) (holding that the duty to supplement only arises when the prior response was "either incorrect or incomplete" and that it cannot be used as a basis to disclose new information after the expiration of the discovery deadline); *Sprint Commc'ns Co. v. Vonage Holdings Corp.*, 500 F. Supp. 2d 1290, 1336-39 (D. Kan. 2007) (holding that Rule 26(e) requires supplementation of discovery responses as soon as the information becomes known and excluding information that defendant delayed disclosing for tactical reasons); *Marcin Eng'g, LLC v. Founders at Grizzly Ranch,*

*LLC*, 219 F.R.D. 516, 524-25 (D. Colo. 2003) (holding that a party cannot rely on its duty to supplement pursuant to Rule 26(e) to provide additional information after the discovery deadline has expired and excluding such information from evidence).

The duty to supplement disclosures under Rule 26(e) cannot be used as an excuse to affirmatively rely on supposedly favorable evidence that a party withheld during discovery for tactical reasons.  The case law is clear that once a party has asserted his Fifth Amendment privilege against self-incrimination, he cannot waive it and seek to use the information withheld in his own defense.

Defendants are attempting to do what this Court has already held to be prohibited — benefit from Ralph's guilty plea by attempting to "explain" that the bribes and kickback payments are somehow "not related to the conversion of guns."  Mot. to Amend at 7.  In *SEC v. Zimmerman*, 854 F. Supp. 896, 899 (N.D. GA. 1993), this Court held that once a defendant has asserted the Fifth Amendment privilege as a shield to avoid responding to pretrial discovery, he is prohibited from later seeking to waive the privilege and use the previously withheld information as a sword by testifying at trial on the same issues.

In *Zimmerman*, defendant refused to answer certain questions during his deposition and to respond to certain written discovery requests based on his Fifth

Amendment privilege against self-incrimination, while simultaneously attempting to keep his options open to waive his privilege and testify in his own defense at trial.  854 F. Supp. at 896-99.  Defendant stated that if he decided to waive his privilege and testify at trial, he would "make himself available for deposition and will respond to discovery requests to which he has previously asserted his Fifth Amendment privilege." *Id.* at 898-99.  Consistent with well-established case law, this Court refused to allow Zimmerman to do so, holding that the "Fifth Amendment privilege cannot be invoked to oppose discovery and then tossed aside to support a party's assertions.  A defendant faces a dilemma of choosing silence or presenting a defense." *Id.* at 899 (internal citations omitted).  This Court continued to note that:

> [defendant] waited until after the [plaintiff] has already filed a motion for summary judgment to make his decision as to whether to stay silent or not.  Discovery has been completed.  By waiting, the defendant has made his decision.  [Defendant] may not use, therefore, any evidence which he has withheld by his invocation of his testimonial privilege in this matter.  He is free, of course, to use any other outside discovered evidence.

*Id.*

This Court's decision in the *Zimmerman* case is consistent with decades worth of well-settled law, including at the appellate court level.  In *Gutierrez-Rodriguez v. Cartagena*, 882 F.2d 553, 577 (1st Cir. 1989), the court affirmed the

trial court's order barring defendant from testifying in his own defense at trial as to matters that he had withheld during discovery based on his Fifth Amendment privilege against self-incrimination. The court held that this did not violate defendant's "due process rights, it merely forced him to abide by his decision and protected plaintiff from any unfair surprises at trial.  A defendant may not use the fifth amendment to shield herself from the opposition's inquiries during discovery only to impale her accusers with surprise testimony at trial." *Id.  See also Duffy v. Currier*, 291 F. Supp. 810, 815 (D. Minn. 1968).[3]  Similarly, in *Traficant v. Commissioner of Internal Revenue Service*, 884 F.2d 258 (6th Cir. 1989), the court affirmed a district court's decision precluding defendant from testifying in his own defense at trial on matters about which he had refused to testify during discovery based on his Fifth Amendment privilege against self-incrimination.  *Id.* at 265 (holding that such "limits are properly within the scope of cases holding that a party to civil litigation or other non-criminal proceedings may encounter costs imposed in exchange for the assertion of the Fifth Amendment privilege as long as

---

[3] "The Federal Rules contemplate that there be full and equal mutual discovery in advance of trial so as to prevent surprise, prejudice and perjury. It is an effective means of detecting and exposing false, fraudulent, and sham claims and defenses. The court would not tolerate nor indulge a practice whereby a defendant by asserting the privilege against self-incrimination during pre-trial examination and then voluntarily waiving the privilege at the main trial surprised or prejudiced the opposing party. At the trial of this case the court will be attentive to any such effort." *Duffy*, 291 F. Supp. at 815 (citation and punctuation omitted).

they are not so high as to force abandonment of the privilege"). *See also Edmond v. Consumer Prot. Div., Office of Attorney General of the State of Maryland*, 934 F.2d 1304, 1308 (4th Cir. 1991) (holding that the "Fifth Amendment privilege cannot be invoked as a shield to oppose depositions while discarding it for the limited purpose of making statements to support a summary judgment motion").

Numerous district courts faced with the same issue have come to the same conclusion that this Court did in the *Zimmerman* case. In *SEC v. Cymaticolor Corp.*, defendant "declined to answer a number of interrogatories based on his fifth amendment privilege against self-incrimination[,but included] a statement that he reserves his right to waive his fifth amendment privilege at a later time and answer the interrogatories." 106 F.R.D. 545, 549 (S.D.N.Y. 1985). The SEC sought an order precluding defendant from using any information at trial about which he had invoked his privilege against self-incrimination relative to his interrogatory responses, and defendant sought to limit the scope of preclusion to only evidence the SEC had not obtained from other sources. *Id.* The court granted the SEC's request and precluded defendant from offering into evidence at trial any information responsive to the interrogatories, holding that defendant's:

> proposal regarding a limited order of preclusion is contrary to one of the purposes of discovery which is to ascertain the position of the adverse party on the controverted issues. Thus, it is irrelevant that the party seeking discovery already knows the facts as to which he seeks

discovery.  While the limited preclusion order would eliminate surprise regarding the existence of the evidence, surprise may still occur regarding the defendant's theory and use of the evidence.  Such a limited preclusion order might reduce the trial to a game of blindman's buff and less of a fair contest with the basic issues and facts disclosed to the fullest practicable extent.

*Id.* (Citations and punctuation omitted).  The court continued to hold that defendant had to make the decision regarding whether to assert his Fifth Amendment privilege when responding to the interrogatories, and could not choose to "wait until the later of thirty days prior to the close of discovery or ninety days prior to trial," because his decision would impact the manner in which the SEC conducted discovery through the rest of the case.  *Id.* at 550.

In *SEC v. Benson*, defendant refused to respond to discovery based on his Fifth Amendment privilege against self-incrimination and then sought to oppose the SEC's motion for summary judgment.  657 F. Supp. 1122, 1129 (S.D.N.Y. 1987).  The court noted that defendant had:

chosen the tactic of seeking to bar plaintiff's access to the evidence. At least to the extent of pleading the Fifth Amendment, that is his right.  But, in a civil case, he cannot have it both ways.  By hiding behind the protection of the Fifth Amendment as to his contentions, he gives up the right to prove them.  By his . . . assertion of the privilege, defendant has forfeited the right to offer evidence disputing the plaintiff's evidence or supporting his own denials.

*Id.* (holding that it would be an abuse of plaintiff's rights to allow defendant to reopen discovery after it had moved for summary judgment).  *See also id.* (holding

that it "would be an abuse of the Fifth Amendment to allow a civil litigant to use it to offer proofs while denying the adversary discovery of his contentions"); *SEC v. Global Express Capital Real Estate Investment Fund I, LLC*, No. 2:03-cv-01514-KJD-LRL, 2006 WL 7347289, at \*13-\*15 (D. Nev. Mar. 28, 2006) (holding that "use of the privilege as a 'shield' against discovery precludes the use of undiscoverable information as a 'sword' in response to summary judgment or at trial to assert any defenses"), *rev'd in part on other grounds*, 289 Fed. Appx. 183 (9th Cir. 2008); *Pack v. Beyer*, 157 F.R.D. 219, 224 (D.N.J. 1993) (holding that "parties which assert the Fifth Amendment privilege are precluded from later waiving the privilege and utilizing the evidence. Parties must either choose to assert a privilege and be barred from using the information at summary judgment or at trial, or they must disclose the information, and thus, be able to use the evidence at a later disposition of the merits"); *United States v. Sixty Thousand Dollars ($60,000) in United States Currency*, 763 F. Supp. 909, 914 (E.D. Mich. 1991) ("Because claimant has asserted a fifth amendment claim in discovery, this court holds that he may not now waive the privilege and testify.").

Against this overwhelming authority against them, the only case that defendants cite in support of their claims that Ralph should be permitted to amend his discovery responses to explain the basis for his plea agreement is a Georgia

state court case, which is easily distinguishable.  In *Kickasola v. Jim Wallace Oil Co.*, 242 S.E.2d 483, 485 (Ga. Ct. App. 1978), defendant, a service station employee, fatally shot a customer during an altercation and pled guilty to manslaughter.   In a subsequent civil trial against him and his employer, the employee was allowed to explain why he chose to plead guilty to manslaughter, even though he believed he was acting in self-defense at the time of the shooting. *Id.* at 485.   The court held that just "because the defendant pleaded guilty to a criminal indictment [does not mean that] he will not be heard to introduce matter of extenuation and justification in a civil case arising out of the same circumstances."  *Id.* at 486.

The *Kickasola* case did not involve a defendant who had withheld relevant information from plaintiff during discovery phase of the case based on his Fifth Amendment privilege against self-incrimination and then sought to waive the privilege so that he could testify on the same issue on his own behalf.  The Fifth Amendment privilege against self-incrimination was not even addressed in the decision.

In the present case, which has now been pending for more than three years because of defendants' repeated attempts to delay the inevitable entry of judgment against them, Glock is entitled to a decision on its motion for summary judgment

based on the fulsome evidence in the record.  The evidence available to this Court for use in deciding Glock's motion for summary judgment now includes Ralph's admission to having paid hundreds of thousands of dollars in bribes and kickbacks to Dutton and Wood in exchange for favorable and preferential action, thereby depriving Glock of its right to their honest services.

Allowing defendants to amend their written discovery responses so that Ralph can attempt to "explain" that his crimes are not related to the conversion of guns is not permissible.  In addition, although not addressed in the body of their Motion to Amend, defendants' request for relief makes it clear that they also seek to be able to amend their opposition to Glock's motion for summary judgment "based solely on the new factual information" that Ralph would provide in his amended discovery responses, leading to further delay of this case.

## III.  **CONCLUSION**

For the above reasons, Glock respectfully requests that this Court deny defendants' Motion to Amend, consider defendants' admissions in Ralph's plea agreement in deciding the pending motions for summary judgment, deny defendants' Motion to Stay (Dkt. No. 171) as moot, and grant such other relief as it deems just and proper.

Dated:  Atlanta, Georgia
        February 12, 2015

                        Respectfully submitted,

        By:             */s/ Michael P. Kohler*
                        Christopher E. Parker
                        Georgia Bar No. 562152
                        Michael P. Kohler
                        Georgia Bar No. 427727
                        **MILLER & MARTIN PLLC**
                        1170 Peachtree Street, N.E., Suite 800
                        Atlanta, GA 30309
                        Telephone:  (404) 962-6100
                        Facsimile:   (404) 962-6300

                                – and –

                        John F. Renzulli (*pro hac vice*)
                        Christopher Renzulli (*pro hac vice*)
                        Scott C. Allan (*pro hac vice*)
                        **RENZULLI LAW FIRM, LLP**
                        81 Main Street, Suite 508
                        White Plains, NY 10601
                        Telephone: (914) 285-0700
                        Facsimile:  (914) 285-1213

                        Attorneys for Plaintiff Glock, Inc.

## <u>CERTIFICATE OF COMPLIANCE WITH LR 7.1(D)</u>

I certify that the foregoing Memorandum of Law in Opposition to Defendant's Motion to Amend has been prepared using Times New Roman 14 point font, one of the approved font and point selections specified in LR 5.1(C), NDGa.

<div style="margin-left:40%">

*/s/ Michael P. Kohler*
Michael P. Kohler
Georgia Bar No. 427727
mkohler@millermartin.com
**MILLER & MARTIN PLLC**
1170 Peachtree Street, N.E., Suite 800
Atlanta, GA 30309
Telephone:  (404) 962-6100
Facsimile:  (404) 962-6300

Attorneys for Plaintiff Glock, Inc.

</div>

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on February 12, 2015, I electronically filed Glock, Inc.'s Memorandum of Law in Opposition to Defendants' Motion to Amend with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

Drew C. Williams, Esq.
S. LaRue Williams, Esq.
James A. Pickens, Esq.
Kinsey, Vincent, Pyle, P.L.
150 S. Palmetto Avenue, Suite 300
Daytona Beach, FL 32114

        – and –

Corey M. Stern, Esq.
Woodward + Stern, LLC
1124 Canton Street
Roswell, GA 30075


                    */s/ Michael P. Kohler*
                    Michael P. Kohler
                    Georgia Bar No. 427727
                    mkohler@millermartin.com
                    **MILLER & MARTIN PLLC**
                    1170 Peachtree Street, N.E., Suite 800
                    Atlanta, GA 30309
                    Telephone:  (404) 962-6100
                    Facsimile:   (404) 962-6300

                    Attorneys for Plaintiff Glock, Inc.